**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DANIEL P. SMITH, | DOCKET NUMBER |
| Appellant, | CB-7121-17-0003-V-1 |
| v. | |
| DEPARTMENT OF ENERGY, | DATE: February 22, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Rushab Sanghvi, Washington, D.C., for the appellant.

Kathryn B. Allen and Jonathan Eugene O'Connell, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a request for review of an arbitration decision that sustained the agency's decision to remove the appellant. For the reasons set forth below, we AFFIRM the arbitrator's decision AS MODIFIED by this order to find that the appellant did not prove that the agency violated his due process rights or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

committed harmful procedural error in effecting his removal and that he did not show that he was a qualified individual with a disability.

## BACKGROUND

The appellant formerly served as a Civil Engineer with the agency's Division of Dam Safety, Office of Energy Projects. Request for Review (RFR) File, Tab 4 at 504. In August 2011, the appellant underwent surgery to address a medical condition and returned to work shortly thereafter. *Id.* at 282-83 (testimony of the appellant). In January 2013, the appellant's first-level supervisor counseled him on performance issues, and in May 2013, the supervisor placed the appellant on a performance improvement plan. *Id.* at 522-29. In June 2013, the appellant requested information about the reasonable accommodation process from the agency's disability program manager, who provided him with the agency's reasonable accommodation policy and information about equal employment opportunity counseling. RFR File, Tab 4 at 153-54 (testimony of the disability program manager), Tab 5 at 45-46. In July 2013, the appellant provided his first- and second-level supervisors with medical evaluations that diagnosed him with a condition related to his prior surgery that affected his cognitive functioning. RFR File, Tab 4 at 133-34 (testimony of the proposing official), 284-86 (testimony of the appellant), Tab 5 at 20-35. In early August 2013, the appellant requested a reasonable accommodation and assistance with the reasonable accommodation process from the disability program manager, and he also requested leave pursuant to the Family and Medical Leave Act (FMLA) from his first-level supervisor. RFR File, Tab 4 at 516-21, Tab 5 at 47-48.

On August 23, 2013, the appellant's first-level supervisor issued him a notice proposing his removal for his "medical inability to perform the duties of any [agency] position for an indefinite period." RFR File, Tab 4 at 480-82. The notice provided the appellant with an opportunity to respond and placed him in an administrative leave status "until further notice." *Id.* at 481. On September 17,

2013, the appellant, through his representative, provided a written response to the proposed removal in which he contended that the notice of proposed removal did not accurately describe his performance or ability to perform in his position and requested reasonable accommodation in the form of leave to engage in cognitive remediation therapy, reassignment, or other accommodations as recommended in his medical evaluations that would allow him to continue working. *Id.* at 483-91.

By email dated November 18, 2013, the agency's disability program manager asked the appellant to provide her with additional medical documentation regarding his request for accommodation. RFR File, Tab 5 at 51-53. By letter dated December 6, 2013, the appellant's representative provided the disability program manager with a narrative response and documentation of the appellant's treatment. *Id.* at 54-98. By email dated January 13, 2014, the agency's counsel asked that the appellant provide additional medical documentation. *Id.* at 99. By letter dated January 27, 2014, the appellant's representative provided to the agency's counsel and disability program manager medical documentation from the appellant's cognitive therapist and stated that she also was awaiting a report from the appellant's neurologist and neuropsychologist. *Id.* at 100-03. Two days later, the agency's counsel notified the appellant's representative that the agency wished to see the additional report. *Id.* at 104. By letter dated February 10, 2014, the appellant's representative provided the agency's counsel and program disability manager with medical documentation from the appellant's neurologist and an updated request for accommodation in the form of 6 months of additional leave. *Id.* at 105-06.

On March 10, 2014, the appellant's second-level supervisor issued a decision sustaining the proposed removal. RFR File, Tab 4 at 492-96. In the decision, the deciding official described the notice of proposed removal and the appellant's response, as well as the correspondence between the agency and the appellant from November 18, 2013, to February 10, 2014. *Id.* at 492-94. The deciding official denied the appellant's request for reasonable accommodation,

concluding that it constituted an undue burden on the agency, and he determined that the appellant could not perform the duties of his or any other agency position. *Id.* at 494-95.

Also in March 2014, the union grieved the appellant's removal on his behalf. *Id.* at 508-14. The union requested a response to the grievance from the agency on several occasions and, receiving no agency response, invoked arbitration in December 2015. RFR File, Tab 5 at 14-19. The arbitrator took testimony and entered exhibits into the record during the hearing and accepted closing briefs from the union and the agency. RFR File, Tab 4 at 16. On October 2, 2016, the arbitrator issued a decision finding that the union's invocation of arbitration was within the time limits set forth in the collective bargaining agreement (CBA); the removal action was for just cause and in accord with all applicable laws, regulations, and the CBA; and the agency did not violate the Rehabilitation Act or the FMLA. *Id.* at 16-64.

The appellant has timely filed a request for review with the Board of the arbitrator's decision, and the agency has responded in opposition to the request. RFR File, Tabs 4, 14. On review, the appellant argues that the arbitrator's decision should be reversed or, in the alternative, that the case be remanded for further adjudication on the grounds that: (1) the arbitrator failed to properly consider the appellant's affirmative defense of disability discrimination; and (2) the arbitrator erred in finding that the agency's removal of the appellant was for just cause because the agency failed to prove its charge by preponderant evidence, and the arbitrator failed to consider the appellant's affirmative defenses regarding violations of due process, agency policy, and the CBA. RFR File, Tab 4 at 5-14. As set forth below, we hold that the arbitrator did not err in finding that the appellant's removal was for just cause, but he failed to make a determination regarding the alleged due process violation and harmful procedural errors; however, we have reviewed these claims, and we find that the agency did not violate the appellant's due process rights or commit harmful procedural error.

We also conclude that the arbitrator did not employ the proper analytical framework for his evaluation of the appellant's affirmative defenses of disability discrimination, but the appellant has not met his burden to show disability discrimination.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction to review an arbitrator's decision under 5 U.S.C. § 7121(d) when the subject matter of the grievance is one over which the Board has jurisdiction, the appellant has alleged discrimination under 5 U.S.C. § 2302(b)(1) in connection with the underlying action, and a final decision has been issued.[2] *Sadiq v. Department of Veterans Affairs*, 119 M.S.P.R. 450, ¶ 4 (2013). Each condition is satisfied in this case. The appellant's removal is within the Board's jurisdiction. 5 U.S.C. §§ 7512(1), 7513(d). The appellant alleged in his grievance and during arbitration that he was subjected to discrimination on the basis of disability when the agency failed to accommodate him prior to his removal. RFR File, Tab 4 at 9-11, 328-37, 508-14. The arbitrator issued an October 2, 2016 final decision regarding the appellant's grievance of his removal. *Id.* at 16-64. Thus, we find that the Board has jurisdiction over the request for review. *See Sadiq*, 119 M.S.P.R. 450, ¶ 4.

The Board's review of an arbitrator's award is limited; such awards are entitled to a greater degree of deference than initial decisions issued by the Board's administrative judges. *Id.*, ¶ 5. The Board will modify or set aside such an award only when the arbitrator has erred as a matter of law in interpreting a civil service law, rule, or regulation. *Id.* Even if the Board disagrees with an arbitrator's decision, absent legal error, the Board cannot substitute its

---

[2] If the appellant did not raise a discrimination claim in connection with the underlying action with the arbitrator, he may raise a discrimination claim with the Board for the first time in a request for review only if such allegations could not have been raised during the negotiated grievance procedure. *Jones v. Department of Energy*, 120 M.S.P.R. 480, ¶ 8 (2013), *aff'd sub nom. Jones v. Merit Systems Protection Board*, 589 F. App'x 972 (Fed. Cir. 2014); 5 C.F.R. § 1201.155(c).

conclusions for those of the arbitrator. *Id.* Thus, the arbitrator's factual determinations are entitled to deference unless the arbitrator erred in his legal analysis, for example, by misallocating the burdens of proof or employing the wrong analytical framework. *Id.* Nevertheless, the Board defers to the arbitrator's findings and conclusions only if the arbitrator makes specific findings on the issues in question. *Id.* Further, the Board may make its own findings when the arbitrator failed to cite any legal standard or employ any analytical framework for his evaluation of the evidence. *Id.*

<u>The arbitrator did not err in finding that the appellant's removal was for just cause.</u>

On review, the appellant argues that the arbitrator erred in finding that his removal was for just cause because the agency did not prove by preponderant evidence the charge of medical inability, as the agency failed to show that the appellant could not meet the essential functions of his position because of his medical restrictions. RFR File, Tab 4 at 12-14. The appellant further contends that the arbitrator's findings are not entitled to deference because the arbitrator failed to set forth a legal standard or analytical framework in his decision to sustain the agency's charge and improperly shifted the burden to the appellant to prove that he could perform the essential functions of his position. *Id.* In his analysis of whether the agency proved its charge, the arbitrator did not set forth any legal standard on which he based his conclusions, and he did not distinguish between his analysis of the agency's charge and the appellant's affirmative defense of disability discrimination. *Id.* at 58-64. However, our examination of the arbitrator's analysis does not support the appellant's assertion that the arbitrator erroneously shifted the agency's burden to prove the charge to the appellant, nor do we find that the arbitrator otherwise applied an incorrect standard of law in adjudicating the charge. Thus, the arbitrator's findings are entitled to deference.

An agency may remove an employee if he is unable, because of a medical condition, to perform the duties of his position. *Bullock v. Department of the Air Force*, 88 M.S.P.R. 531, ¶ 7 (2001). When, as here, the appellant does not occupy a position with medical standards or physical requirements or that is subject to medical evaluation programs, to prove that he is unable to perform the duties of his position, the agency must establish a nexus between his medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others.[3] *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014). In other words, the agency must establish that the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *Id.* In determining whether the agency has met its burden, the Board will consider whether a reasonable accommodation exists that would enable the appellant to safely and efficiently perform those core duties. *Id.* However, for the limited purposes of proving the charge, the agency is not required to show that it was unable to reasonably accommodate the appellant by assigning him to a vacant position for which he was qualified; whether it could do so goes to the affirmative defense of disability discrimination and/or the reasonableness of the penalty. *Id.*

The arbitrator made detailed factual findings regarding the appellant's ability to perform the core duties of his position and concluded that the appellant's medical condition "adversely impacted his ability to perform the complex duties [that were] required to perform in his position as a civil engineer for the Agency." The arbitrator determined that the agency's decision to remove

___

[3] The March 10, 2014 agency decision removing the appellant stated that his position "requires the ability to meet certain physical standards"; however, there is no evidence that he occupied a position with medical standards or physical requirements or was subject to medical evaluation programs of the kind contemplated in *Fox*. RFR File, Tab 4 at 495; *see Fox*, 120 M.S.P.R. 529, ¶¶ 24-25 (articulating a different standard to remove an employee for physical inability to perform when the employee is disqualified from a position with medical standards or physical requirements, or that is subject to medical evaluation programs).

the appellant was supported by documentation from his medical providers that he "was not able physically to perform the duties of his position and would not be in a position to do so for at least another four months." RFR File, Tab 4 at 58-64. We find no legal error in the arbitrator's findings. Although the appellant alleged that the agency did not articulate the essential duties of his position, and his position description is not a part of the record, he did not dispute the agency's description of his primary duties, set forth in the March 2014 decision to remove him, as completing dam inspections, follow-up reports and letters regarding the inspections, and follow up to responses from project owners, which required competent cognitive functioning. *Id.* at 321-24, 494-95. The appellant argued before the arbitrator that his performance deficiencies were not solely related to his medical condition and that he could be accommodated in his position, but the medical documentation the appellant submitted during the removal proceedings reflected that his medical condition significantly affected his cognitive functioning and that his difficulties with timely and accurately completing inspection reports stemmed from his cognitive condition. RFR File, Tab 5 at 20-35, 106.

Despite the appellant's contention that he could work with reasonable accommodation, at the time of his removal, he had been on paid administrative leave for approximately 6 months while the agency worked with his attorney to determine whether a reasonable accommodation was possible. RFR File, Tab 4 at 494. Moreover, the appellant's neurologist opined in his February 19, 2014 letter, which the appellant submitted to the agency, that the appellant could not work even with accommodation, and he could not ascertain whether the appellant would ever be able to return to work until the appellant had completed at least 4 additional months of therapy and a follow-up neuropsychological evaluation. RFR File, Tab 5 at 106. The appellant argued that his neurologist did not review all of the pertinent information in reaching this conclusion, but he acknowledged that the conclusion was based on a project position description, job performance

evaluation, and reports he submitted to the neurologist. RFR File, Tab 4 at 292-94 (testimony of the appellant). At no time has the appellant provided any updated documentation that would call into question the agency's determination that he could not return to work, with or without accommodation.[4] *Id.* at 494-95. When an appellant is unavailable for duty due to his incapacitation and his unavailability has no foreseeable end, then removal of the employee is warranted. *Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶ 17 (2008). Therefore, we conclude that the arbitrator properly made findings that the agency proved its charge.

We also find no legal error in the arbitrator's finding that the appellant's absence constituted a burden on his office's operations. RFR File, Tab 4 at 62-63. Generally, removal for physical inability to perform the essential functions of a position promotes the efficiency of the service. *D'Leo v. Department of the Navy*, 53 M.S.P.R. 44, 51 (1992). The medical documentation the appellant provided reflects that, at the time of his removal, his return to work was not assured; thus, there was no foreseeable end to his incapacity. RFR File, Tab 5 at 106. He requested an additional 6 months of leave to undergo the therapy recommended by his medical providers. *Id.* at 105. The deciding official explained in his decision to remove the appellant that it would be an undue hardship for the agency to grant the appellant 6 more months of leave in addition

---

[4] At the hearing, the appellant testified that he was employed and performing some of same duties as that of his former position as a civil engineer. RFR File, Tab 4 at 290-92 (testimony of the appellant). The Board has found that, if during the pendency of the Board appeal of a removal for medical inability to perform, an appellant presents new medical evidence showing that he has recovered such that he now can perform the essential duties of his position, the removal action will be reversed. *See, e.g.*, *Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶ 9, *aff'd*, 625 F. App'x 549 (Fed. Cir. 2015), *and overruled on other grounds by Haas v. Department of Homeland Security*, 2022 MSPB 36. However, to invoke this principle, the appellant must present evidence that clearly and unambiguously demonstrates that he has recovered. *Id.* To the extent the appellant attempted to show he has recovered, we find the appellant's assertions, without supporting medical documentation, do not meet this standard.

to the 6 months of administrative leave it already had provided to him, as the agency would be unable to hire an engineer to perform his duties during his absence, and up to three engineers would be required to take on his workload. RFR File, Tab 4 at 494. Further, the deciding official observed that insufficient travel funds and staffing would negatively impact the agency's ability to ensure that the dams it regulated operated safely and were in compliance with applicable regulations. *Id.* Thus, we find no legal error in the arbitrator's finding that the appellant's absence had an adverse impact on the agency, which supports a conclusion that the agency's action was taken for such cause as will promote the efficiency of the service. *See Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 18 (2014) (finding that the appellant's removal was taken for such cause as will promote the efficiency of the service when the record reflected that there was no foreseeable end to his incapacity, and his medical documentation did not support his ability to return to duty).

Finally, we find no legal error in the arbitrator's conclusion that the agency's penalty did not exceed the "tolerable limits of reasonableness." RFR File, Tab 4 at 62-63; *see Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 18 (2014) (holding that the appellant's removal was within the tolerable limits of reasonableness when her condition required long-term recovery and rehabilitation, without a foreseeable end to her incapacity), *overruled on other grounds by Haas v. Department of Homeland Security*, 2022 MSPB 36. Accordingly, we affirm the arbitrator's decision as to his finding that the appellant's removal was appropriate.

<u>The arbitrator failed to make a determination regarding the appellant's affirmative defense of a due process violation, but the agency did not violate the appellant's due process rights.</u>

On review, the appellant argues that the arbitrator failed to address the appellant's arguments that establish that the agency committed due process violations, warranting reversal. RFR File, Tab 4 at 13-14. The appellant argues

that the agency's decision relied on aggravating factors, including medical documents, such as the February 10, 2014 letter from the appellant's neurologist, and conclusions drawn from those documents, that were not included in the notice of proposed removal and to which the appellant was not afforded an opportunity to respond. *Id.* at 13, 324-27. He also argues that an incident during one of his dam inspections was considered in issuing the proposal to remove him, even though it was not mentioned in the proposal or the decision to remove him. *Id.* The appellant contends that the arbitrator's findings are not entitled to deference because he failed entirely to address the alleged violations. *Id.* at 12-14.

Our review of the arbitrator's decision reflects that the arbitrator failed to make determinations regarding the appellant's claims of due process violations and harmful procedural error. In finding that the appellant could not perform the duties of his position, the arbitrator did not set out a legal standard or analytical framework to address the violations raised below by the union on the appellant's behalf and did not make specific findings on the alleged violations, merely stating in his decision that "[t]he Arbitrator has taken into account all other arguments raised by the Union." *Id.* at 57-64. Absent a legal standard, analytical framework, or specific findings regarding the due process violation claims raised by the union, the Board has no basis upon which to defer to the arbitrator on these issues. *See, e.g., Hollingsworth v. Department of Commerce,* 115 M.S.P.R. 636, ¶ 8 (2011) (finding that an arbitrator's decision denying the appellant's requests for attorneys' fees and compensatory damages was not entitled to deference when the arbitrator did not make specific findings, cite any legal standard, or employ any analytical framework in denying the requests).

Based on the record before us, however, we find that the agency provided the appellant with the minimum due process required to effect his removal. When, as here, a public employee has a property interest in his continued employment, the Government cannot deprive him of that interest without due process. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538 (1985);

*Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1374-75 (Fed. Cir. 1999). The essential requirements of constitutional due process for a tenured public employee are notice of the charges against him, with an explanation of the evidence, and an opportunity for the employee to present his account of events prior to the deprivation of his property right to continued employment. *Loudermill*, 470 U.S. at 546-48. An employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond are undermined when a deciding official obtains new and material information through ex parte communications. *Stone*, 179 F.3d at 1376. When an employee has notice only of certain charges or portions of the evidence and the deciding official considers new and material information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed, procedural due process guarantees are not met because the employee is "no longer on notice of the reasons for dismissal and/or the evidence relied upon by the agency." *Id.*

"[N]ot every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding"; rather, "[o]nly ex parte communications that introduce new and material information to the deciding official will violate the due process guarantee of notice." *Id.* at 1376-77. The Board will consider the following factors, among others, to determine whether an ex parte contact is constitutionally impermissible: (1) "whether the ex parte communication merely introduces 'cumulative' information or new information"; (2) "whether the employee knew of the error and had a chance to respond to it"; and (3) "whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Id.* at 1377. The ultimate inquiry is whether "the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under

such circumstances." *Id.* If such a due process violation has occurred, it is not subject to the harmful error test; rather, the former employee is entitled to a new constitutionally correct removal procedure. *Id.*

Here, the deciding official relied in his decision to remove the appellant upon correspondence between the agency's counsel, the disability program manager, and the appellant's representative that occurred after the notice of proposed removal was issued and the appellant submitted his reply. RFR File, Tab 4 at 480-96. In his decision, the deciding official described: (1) the November 18, 2013 email correspondence from the agency's disability program manager to the appellant; (2) the December 6, 2013 letter from the appellant's representative to the disability program manager that enclosed documentation of the appellant's treatment; (3) the January 13, 2014 email from the agency's counsel to the appellant's representative; (4) the January 27, 2014 letter from the appellant's representative to the agency's counsel and the disability program manager that enclosed medical documentation; (5) the January 29, 2014 email from the agency's counsel to the appellant's representative; and (6) the February 10, 2014 letter from the appellant's representative to the agency's counsel and the disability program manager that enclosed medical documentation. *Id.* at 492-94. None of the correspondence between the agency and the appellant from November 18, 2013, to February 10, 2014, included the deciding official; accordingly, we conclude that the content of the correspondence was communicated ex parte to the deciding official. RFR File, Tab 5 at 51-106; *see Mathis v. Department of State,* 122 M.S.P.R. 507, ¶ 12 (2015) (finding that the deciding official initiated ex parte communications with a human resources representative to determine whether the appellant's alleged mitigating factors were supported by the facts).[5]

---

[5] The record is not clear as to whether the agency's counsel was acting as an agent of the deciding official during her correspondence with the appellant's representative, in which case the communication of the content of the correspondence to the deciding official may not have been ex parte.

However, the appellant's argument fails because he cannot show that, regarding the second *Stone* factor, he was unaware of the likelihood of such a communication when he submitted the substance of the ex parte communication to the agency in furtherance of his assertion that he was eligible for a reasonable accommodation. In the appellant's reply to the agency's notice of proposed removal, he asserted that removal was not appropriate and that he was eligible for reasonable accommodation that would enable him to perform the duties of his position. RFR File, Tab 4 at 484-91. Although the appellant asserts on review that the agency did not notify him that it intended to consider the post-reply information he submitted to it in support of his request for reasonable accommodation in the removal action, the appellant's extensive discussion of his request for reasonable accommodation in his reply reflected that he was aware that such a request could be considered by the deciding official. *See Mathis*, 122 M.S.P.R. 507, ¶ 9 (finding that a deciding official does not violate an employee's due process rights by considering issues raised by the employee in response to a proposed adverse action and then rejecting those arguments in reaching his decision); *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶¶ 10-11 (2014) (holding that when the appellant raised and addressed uncharged misconduct in her written and oral replies, the deciding official's consideration of that information did not violate her right to due process), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015). Moreover, each time the agency requested post-reply medical information from the appellant, he had the opportunity to submit information in furtherance of his assertion that he was eligible for a reasonable accommodation instead of removal for medical inability to perform his duties. An appellant is not entitled to know the particular weight that the deciding official will attach to his arguments raised in response to a proposed adverse action in advance of the final decision. *Id.*, ¶ 12; *see Mathis*, 122 M.S.P.R. 507, ¶ 9. By submitting documentation that indicated he was unable to perform the core duties of his position with or without accommodation,

the appellant assumed the risk that the deciding official would reach conclusions contrary to the appellant's interests as to whether the charge of medical inability could be sustained. For these reasons, we find that the appellant received a full opportunity to respond to the charges against him and was not deprived of due process.

The appellant also argued that the proposing official considered information regarding an incident during one of the appellant's dam inspections, but this information was not included in the notice of proposed removal or subsequent decision. RFR File, Tab 4 at 13, 324-27. At the hearing, the proposing official testified that he received feedback from a facility the appellant had inspected that expressed concern that the appellant did not seem well during a past inspection. *Id.* at 148-49 (testimony of the proposing official). This information did not constitute an ex parte communication because there is no evidence that this information was communicated to the deciding official or that the deciding official considered the information in his decision. *See Stone*, 179 F.3d at 1376.

The arbitrator did not make a determination regarding the appellant's affirmative defense of harmful procedural error, but the agency did not commit harmful procedural error in effecting the appellant's removal.

On review, the appellant argues that the agency's failure to provide him with an opportunity to respond to the denial of his accommodation request violated agency policy and the CBA. RFR File, Tab 4 at 13-14. Additionally, despite finding that the post-reply ex parte communications did not constitute a due process violation, we must determine whether the communications constituted harmful error. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1281-82 (Fed. Cir. 2011). Because the arbitrator did not address the appellant's affirmative defense of harmful procedural error, nor whether the post-reply ex parte communication constituted harmful error, the Board cannot defer to the arbitrator on this issue. *See Hollingsworth*, 115 M.S.P.R. 636, ¶ 8. As set forth

below, we find that neither the agency's failure to provide the appellant with an opportunity to respond to the denial of his accommodation, nor the ex parte communication, constituted harmful procedural error.

To prove harmful procedural error, the appellant must show both that the agency committed procedural error and that the error was harmful. *Rogers v. Department of Defense*, 122 M.S.P.R. 671, ¶ 7 (2015). Harmful error cannot be presumed; an agency error is harmful only where the record shows that the error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id.* The appellant bears the burden of proving by preponderant evidence that the agency committed harmful error in reaching its decision. 5 C.F.R. § 1201.56(b)(2)(i)(C), (c)(1).

The appellant alleged that agency policy and the CBA required an employee denied an accommodation to be provided a reason for the denial and the ability to appeal it. RFR File, Tab 4 at 13-14, 327, 338-39. The appellant does not cite to the CBA in support of this proposition, nor do we find that the CBA contains such a policy. *Id.* at 370-477. The agency's reasonable accommodation policy provides that, "If the request is denied, the written decision will explain the basis for the denial and notify the requester of his/her right to appeal." *Id.* at 539. The agency's disability program manager testified, and the record reflects, that the agency effectively informed the appellant that his request for reasonable accommodation was denied in the decision effecting his removal but that he was not notified of his right to appeal the reasonable accommodation decision. *Id.* at 189-90 (testimony of the disability program manager), 494. Thus, the agency erred in failing to notify the appellant of his right to appeal the decision denying his request for reasonable accommodation. However, the appellant has not shown that this error was one that would have caused the agency to reach a different conclusion regarding his removal in the absence or cure of the error. *See Rogers*, 122 M.S.P.R. 671, ¶ 7. The appellant contends that the February 10, 2014 letter from his neurologist was intended to advocate for a

reasonable accommodation, and had he known that the agency would rely upon it to conclude that he was medically unable to perform, he "may have been able to discuss" why the information his neurologist considered was not relevant to the deciding official's decision and "work with the Agency to find a workable accommodation." RFR File, Tab 4 at 326-27, 339. The appellant does not show how this discussion would have resulted in the deciding official reaching a different conclusion regarding the appellant's inability to perform the duties of his position. In particular, the February 10, 2014 letter was unequivocal in its assessment that the appellant could not return to work for at least another 4 months, if ever; thus, the appellant has not demonstrated that his explanation of the letter would have led the agency to conclude that he could be accommodated or that he could perform the core duties of his position. RFR File, Tab 5 at 106. Accordingly, we find that the agency's error was not harmful.

The post-reply ex parte communication similarly contained information that led to the deciding official's conclusion that the appellant could not be accommodated and was unable to perform the core duties of his position. RFR File, Tab 4 at 492-96. As set forth above, the appellant has not shown that his explanation of the ex parte information would have led the agency to conclude that he could be accommodated and thus retain his position; accordingly, we find that the ex parte communication did not constitute harmful error.

<u>The arbitrator failed to determine whether the appellant was a qualified individual with a disability, but the appellant did not prove his claim of disability discrimination.</u>

We affirm, as modified below, the arbitrator's finding that the appellant did not prove that the agency discriminated against him on the basis of his disability. On review, the appellant argues that the arbitrator erred in concluding that the appellant's requested reasonable accommodation placed an undue hardship on the agency and that the appellant was accommodated when the agency placed him on administrative leave. RFR File, Tab 4 at 9-11. In his analysis of the appellant's

affirmative defense of disability discrimination, the arbitrator did not set forth any legal standard on which he based his conclusions, nor did he follow any cognizable analytical framework. *Id.* at 58-64. In particular, he failed to address whether the appellant was a qualified individual with a disability, a disputed fact, before proceeding to find that the requested accommodation would have placed an undue hardship on the agency. *Id.* Thus, the Board has no basis on which to defer to the arbitrator's findings. *See FitzGerald v. Department of Homeland Security*, 107 M.S.P.R. 666, ¶ 18 (2008) (holding that the Board may make its own findings regarding the appellant's claim of discrimination because the arbitrator did not cite a legal standard and his analysis did not follow the proper legal framework), *overruled on other grounds by Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. We have examined the record and find that the appellant nevertheless failed to establish his affirmative defense of discrimination.

The Rehabilitation Act requires an agency to provide a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability unless the agency can show that the accommodation would cause an undue hardship on its business operations. *Clemens,* 120 M.S.P.R. 616, ¶ 10; 29 C.F.R. § 1630.9(a).[6] With exceptions not applicable here, the term "qualified" means that the individual satisfies the requisite skill, experience, education, and other job-related requirements of the employment position the individual holds or desires and, with or without a reasonable accommodation, can perform the essential functions of the position.

---

[6] As a Federal employee, the appellant's claim of discrimination on the basis of disability arises under the Rehabilitation Act of 1973. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 9 n.4 (2013). The Rehabilitation Act incorporates the regulatory standards for the Americans with Disabilities Act (ADA). *White,* 120 M.S.P.R. 405, ¶ 9 n.4. Further, the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101), applies to this appeal because the incidents in question occurred after the January 1, 2009 effective date of the ADAAA. *White*, 120 M.S.P.R. 405, ¶ 9 n.4.

*Clemens*, 120 M.S.P.R. 616, ¶ 10; 29 C.F.R. § 1630.2(m). Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions, or reassigning the employee to a vacant position whose duties the employee can perform. *Clemens*, 120 M.S.P.R. 616, ¶ 10. To establish disability discrimination on the basis of a failure to accommodate, an employee must show that: (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014).

The record below establishes that although the appellant demonstrated that he is an individual with a disability, he did not establish that he is a qualified individual with a disability. At the time of the appellant's removal, the most recent medical documentation that he submitted from his neurologist to the agency opined that his memory loss and attention difficulty had "severely impacted his ability to work," that "[i]t is too soon for [the appellant] to be cleared to return to his usual work, even with reasonable accommodations," and that 4 more months of therapy were required before the appellant's neurologist could determine whether the appellant could return to work at all. RFR File, Tab 5 at 106. Although the appellant contended that he could return to work with accommodation, this documentation concluded that he was not able to return to work, with or without accommodation, for at least 4 months, if at all. *Id.* Thus, at the time of his removal, the appellant was medically incapacitated, could not perform the essential functions of his position, and was not a qualified individual with a disability. *See, e.g., Petitioner v. Department of the Army*, EEOC Appeal No. 0320150001, 2015 WL 5318989 (Sept. 4, 2015) (concurring with the Board's final order in finding that the petitioner was not a qualified individual with a disability when "the most reliable medical documentation indicated that she was

unable to return to work in any capacity because of her disability"). Moreover, on review, the appellant has not disputed the agency's claim that it could not accommodate him by reassigning him to a vacant position for which he was qualified. RFR File, Tab 4 at 9-11, 495. Because the appellant is not a qualified individual with a disability, his claim of disability discrimination based on failure to accommodate fails. *See Fox*, 120 M.S.P.R. 529, ¶ 34 (holding that the appellant failed to prove her claim of disability discrimination because she could not perform the essential functions of her position even with reasonable accommodation and was not a qualified individual with a disability).

Moreover, we find the appellant's requested accommodation would not have been effective and would have caused an undue burden on the agency's operations. A determination of undue hardship should be based on several factors, including, inter alia, the nature and cost of the accommodation needed, the overall financial resources of the facility, the type of operation, and the impact of the accommodation on the operation of the facility. *Clemens*, 104 M.S.P.R. 362, ¶ 25. Following about 6 months of administrative leave, the agency denied the appellant's request for an accommodation of 6 additional months of leave to receive treatment and evaluation for his medical condition. RFR File, Tab 4 at 494-95. A request for an indefinite period of leave, such that the employee cannot say whether or when he will be able to return to work at all, constitutes an undue hardship. *See Stevens v. Department of the Army*, 73 M.S.P.R. 619, 628-29 (1997) (finding that open-ended "latitude" granted to an employee in leave and attendance matters was an unduly burdensome accommodation); *see also Jones v. Department of Transportation*, 295 F.3d 1298, 1310 (Fed. Cir. 2002) (quoting *Schultz v. United States Navy*, 810 F.2d 1133, 1137 n.* (Fed. Cir. 1987), for the proposition that "[a]n agency is not required . . . to indefinitely retain an employee on its rolls who cannot work due to poor health").

The appellant's medical documentation demonstrates that he could not work at least as of February 2014, and could not provide a date on which he would return to work. RFR File, Tab 5 at 106. Based on the appellant's neurologist's conclusion that he could not return to work in the foreseeable future, the appellant's requests for accommodation would not have been effective accommodations that would have allowed him to perform the essential functions of his position. The appellant, who already had been in an administrative leave status for 6 months and had undergone 2 months of treatment for his medical condition when he requested 6 additional months of leave, was unable to show that 6 more months of leave would enable him to return to work. RFR File, Tab 5 at 103, 106. Additionally, the agency articulated that his absence, which already had continued for 6 months, would have had a negative financial impact on the agency due to limited travel funds, and would have caused strain on the remaining engineers to cover the appellant's inspections and the office as a whole in meeting its mission to ensure that dams within its purview operated safely. RFR File, Tab 4 at 494-95. Accordingly, we find that the requested accommodation of leave would have constituted an undue burden on the agency.

The arbitrator did not err in finding that the agency did not violate the appellant's rights under the FMLA.

Intertwined in the appellant's arguments asserting disability discrimination is his argument the agency violated his right to 12 weeks of leave under the FMLA when it did not approve his August 2013 application for leave under the FMLA and instead initiated the instant removal action, which deprived him of the opportunity to obtain treatment. RFR File, Tab 4 at 24, 339-40. If an agency bases an adverse action on its interference with an employee's rights under the FMLA, the adverse action is a violation of law and cannot be sustained. *Gross v. Department of Justice*, 77 M.S.P.R. 83, 90 (1997). Under the FMLA, an "eligible" employee of a covered employer is entitled to unpaid leave, or paid leave, if earned for a period of 12 weeks in any 12-month period because of, inter

alia, a serious health condition that renders the employee unable to perform his job. 5 U.S.C. § 6382(a)(1); *Gross*, 77 M.S.P.R. at 86. In taking a leave-related disciplinary action, an agency bears the burden of proving that it properly denied an "eligible" employee leave under the FMLA. *Jefferies v. Department of the Navy*, 78 M.S.P.R. 255, 259 (1998).

However, the charge in this matter was nondisciplinary in nature, medical inability to perform. RFR File, Tab 4 at 492-96. In any event, shortly after the appellant requested leave under the FMLA, the agency issued the notice of proposed removal, which provided that he immediately would be placed in an administrative leave status and remain in this status until further notice; it is undisputed that the appellant remained on paid administrative leave until the issuance of the decision sustaining his removal, or for just over 6 months. *Id.* at 480-82. Therefore, the agency effectively provided the appellant with all of the leave to which he was entitled under the FMLA and much more. *See Young v. Department of Veterans Affairs*, 83 M.S.P.R. 187, ¶ 11 (1999) (finding that the FMLA allows a maximum of 12 workweeks of leave, and so it did not preclude sustaining a charge of excessive use of unpaid leave that lasted more than 12 weeks). We thus find that the agency did not violate the appellant's rights under the FMLA. Accordingly, the arbitrator's decision is affirmed as modified by this Final Order.

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of <u>the date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:            _____
                          Gina K. Grippando
                          Clerk of the Board
Washington, D.C.